George Brass # 1045449
HDSP / P.O. Box 650
Indian Springs, NV 89070
Plaintiff in Pro Se

United States District Court
District of Nevada

George Brass,                     Case No. 2:21-cv-00074-RFB-VCF
    Plaintiff,
v.                                Reply
The State of Nevada, et al,
    Defendants

I. Introduction and Argument

Defendants do not oppose Brass's Motion for Leave to Amend therefore Brass's Motion for Leave to Amend should be granted. They also do not dispute his medical allegations. In anticipation of the Court granting Leave to Amend, Brass has attached his First Amended Complaint as an Exhibit to his Reply.

As to the Opposition to the request for sanctions, Brass asks the Court to take judicial notice that the citation to the AR that governs inmate access to medical files through AR 639 and AR 740 and a petition for Mandamus is both disingenuous and misleading.

Page 1

Bruss has requested to review his medical files without answer or success.

The grievance procedure takes 45 days (informal), 45 days (1st level) and 60 days (2nd level) to exhaust or 150 days.

A writ of mandamus requires access to the law library, a knowledge of how to prepare and file, and weeks if not months to litigate.

This would require a motion to stay these proceedings as the records needed to accurately identify facts, witnesses, documents and evidence to include in the pleadings and litigation.

or.

The AG's office makes one call, e-mail, or fax to the NDSP medical department to have Bruss review his files, to not delay proceedings.

or.

This Court Orders the same. Since it involves active litigation. Let's stop the AG and NDSP (and NDOC) from hiding behind its regulations (AR 634 + AR 750) which do not work as designed or in practice. Enough. Rule 16 Initial disclosures. FRCP allow pre-complaint filing discovery. Also subpoenas to issue. We avoid all this by a phone call, e-mail, or text. Not "greater access" (Opp. p.4 et al) but "access" period.

Any doubts? Let's hold a hearing and hear from the medical records + law library staff as to "3-5 working days" and access to the library. The truth will not favor the State.

or.

Have the AG's office work with Bruss to informally resolve the issues and not squander valuable court time.

II. Conclusion

Bruss is hard pressed to "point to a policy or custom" or case law to address the plethora of authority cited by the State when the medical records and legal reference materials are not accessible to him in fact or through Rules and Regulations which so limit access as to be access in theory but not in practice. However his unrelated medical allegations favor his request for relief. Grant Bruss's requests or alternatively set a hearing to develope actual facts and not theories of access to hold the Defendants accountable, or resolve as this Court deems appropriate.

Respectfully submitted this 29 day of June 2022

*George Bruss*

George Bruss # 1015449
Plaintiff in Pro Se

1  George Bruss
2  High Desert State Prison
3  P.O. Box 650
4  Indian Springs, NV 89070
5  Prison Number 1045449
6
7              United States District Court
8                  District of Nevada
9
10 George Bruss,                    Case No. 2:21-cv-00074-RFB-UCF
11        Plaintiff,
12 vs.                              First Amended
13 The State of Nevada, ex rel. The NDOC,   Civil Rights Complaint
14 Charles Daniels, Dir of the NDOC;        Pursuant to
15 Michael Minev, Medical Dir of the NDOC;  42 U.S.C. § 1983
16 Dr. Gregory Bryant, Dr. Wilson Bernales, JURY TRIAL REQUESTED
17 Dr. David Rivas, Nursing Director,
18 Benjamin Gutierrez, Nurse Practitioners
19 Rio and Martin, Jaymie Cabrera, R.N.,
20 Charge Nurse Nilo Peret, R.N. Nick Parsons,
21 Adrienne Thompson, and Does 1-10
22              Defendants
23         A. Jurisdiction.
24 1) This Complaint alleges that the civil rights of Plaintiff George Bruss who
25 presently resides at HDSP were violated by the Defendants against Bruss at
26 HDSP, Indian Springs, NV on the following dates:
27    2014 to Present,  2014 to Present, and 2014 to Present
        (Claim 1)         (Claim 2)          (Claim 3)
28                        Page 1

## Introduction

This is a civil rights action filed by George Bruss, a state prisoner, for damages and injunctive relief under 42 USC §1983 alleging denial of medical care in violation of the Eighth Amendment to the United States Constitution.

## Jurisdiction

1. The Court has jurisdiction over the plaintiffs claims of violation of federal constitutional rights under 42 U.S.C. §§ 1331(1) and 1343.

## Parties

2. The plaintiff George Bruss, was incarcerated at High Desert State Prison ("HDSP") during the events described in this complaint.

3. Defendant The State of Nevada ex rel The Nevada Department of Corrections is the state agency which operates Nevada's prisons including HDSP. It is sued in it's official capacity for not providing adequate medical care and redress for Bruss.

4. Defendants Gregory Bryant, Wilson Bernales, and David Rivas were or are physicians employed at HDSP. They are sued in their individual and official capacities.

5. Defendant Michael Minev is the medical director of the NDOC and is responsible for ensuring inmates receive adequate medical care and redress for the future to provide. He is sued in his individual and official capacity.

6. Defendant Benjamin Gutierrez is the Nursing Director at HDSP and is responsible for all aspects of nursing at HDSP including staffing, supervision, continuity of care, as well as to respond or assign for response medical requests for treatment

Page 2

or "kites" grievances as well as those responsibilities under the NDOC's Administrative Regulations (AR's) and HDSP's Operational Procedures (OP's). He is sued in his official and individual capacity.

7. Defendants Nurse Practitioners Rio and Martin are employed at HDSP to assist with evaluating inmates' medical needs and can recommend and order medications, tests, and treatment plans. They are sued in their individual capacities.

8. Defendant Jaymie Cabrera is the medical case manager at HDSP and is generally responsible for ensuring provision of medical care to prisoners and specifically for scheduling medical appointments outside the prison when a prisoner needs specialized treatment or evaluation. She is sued in her individual and official capacities.

9. Defendant Adrienne Thompson is believed to share the scheduling responsibilities with Defendant Cabrera, para 8, supra, and is sued in her individual and official capacities.

10. Defendant Nilo Peret was employed as a Charge Nurse working under HDSP's Director of Nursing Services to supervise HDSP's nursing staff, provide direct care to inmates in all forms (infirmary appointments, emergent care ("man-down"), other) as well as assist with responding to kites (supra), grievances, and in-person requests. He is sued in his individual and official capacities.

11. Defendant Nick Parsons is employed as a Registered Nurse at HDSP and assist the nursing director, charge nurse, and provides direct care to inmates through pill calls, and the response to kites and grievances, as well as man downs.

Page 2a

12. Defendant John Does (1-10) are medical staff whose names are presently unknown to plaintiff. They are sued in their individual and official capacities.

13. All of the Defendants have acted, and continue to act, under color of state law at all times relevant to this Complaint.

Facts

Nature of the Case

14. Plaintiff files this Complaint to seek relief and damages as a result of the Defendants deliberate indifference to his serious medical conditions to wit:

   a) a compressed spine (claim one)
   b) nerve damage to both hands (claim two);
   c) Failures to provide medications and recommended care (claim three)

As a result Plaintiff's 8th Amendment Rights have, and continue to be violating, causing him continuing damage, pain, and suffering

15. Plaintiff believes, and thereupon alleges, his requests for medical care were communicated through his interaction with pill call nurses and through kites and grievances that were read, evaluated and responded to by Defendants Parson (in person, kites, informal grievances), Peret (in person at infirmary appointments, 1st level grievances, kites), Defendant Gutierrez (grievances, all levels, kites), Defendants Bryant, Bernales, and Rivas (in person and in kites, grievances in consult with Gutierrez, Peret and other nursing Defendants), and Defendant Minev who's second level grievance responses effected continuity of care and his conferring with Bryant, Bernales, Rivas as well as Gutierrez as to continuity of care.

Page 3

## Facts Common to All Claims

1. Plaintiff George Brass (hereinafter "Brass") is an inmate incarcerated at
2. HDSP which has, and continues to be on a modified lockdown due to the Covid-19
3. pandemic.
4. Brass specifically brings this Complaint as to the actions, inactions, failures
5. and deliberate actions of the Defendants from 2019 to the present as reflected
6. in his medical files, grievances, kites and other communications (such as
7. from Brass's family, friends, outside counsel, case worker(s), custody staff
8. and others) to NDOC/HDSP officials, staff and Defendants.
9. These communications are contained in Brass's medical files, Institutional
10. or "I" file, Central or "C" file, and on NOTIS (Nevada Offender Tracking
11. Information System) none of which are accessible to Brass. Similarly,
12. Brass is informed and believes the outside medical care provider records
13. also substantiate the allegations contained in this Complaint.
14. Without access to these records, which will take an order of this
15. Court, Brass cannot fully and accurately identify all the facts, witnesses,
16. documents and other evidence needed to draft this Complaint and will
17. seek leave to amend once the Court allows him access. NDOC regulations
18. prohibit inmates from possessing medical records without a Court order.
19. As further set forth in the following claims, Brass has been dealing
20. with the effects of a compressed cervical spine (claim one), nerve damage to
21. both hands (claim two), and failures to provide medications and recommended
22. care (claim two). The continued delay(s) in surgery only makes the
23. symptoms worse, increasing pain, suffering and the likelihood that the
24. nerve damage could become permanent. The denial, delay and running
25. out of prescribed medications exacerbates the situation. The combined
26. effect on Brass is loss of function, decrease in ability to perform daily
27. activities without pain, suffering, or at all.
28.

1  Brass further alleges he has either exhausted all of the issues raised
2  in this Complaint and/or in the alternative, is asking that he be excused
3  from a grievance procedure that is futile. Furthermore, Brass alleges
4  that the NDOC and HDSP's failure to comply with the time limits of
5  its own Administrative Regulations as to Grievances (responses to
6  Informal Grievance, 45 days; 1st level, 45 days; and 2nd level,
7  60 days) acts as a waiver of the defense of failure to exhaust.

    The failure to properly administer the grievance process also
frustrates Brass's ability to timely exhaust as to have his issues
informally resolved or exhausted as to seek review by a Court and
intervention and relief for claims that if not addressed, supra,
can and will cause further pain, suffering, and damage.

    Despite having knowledge of Brass's medical condition, needs and
grievances the Defendants remain deliberately indifferent.

    Defendant Doctors Bryant, Bernales, and Rivas individually and collectively
(as members of the utilization review panel) did not provide Brass with adequate
care, medications and follow-up treatment with outside specialists.

    Brass has submitted repeated requests for treatment and has filed
Grievances requesting adequate care, medications and follow up care with
outside specialists.

    When a prisoner files a grievance, the grievance staff calls the matter
to the attention of those individuals responsible for the matter the grievance
concerns.

    Defendants Parsons, Peret, and Gutierrez were responsible or assigned
to review and respond to Brass's medical kites and grievances at the
informal and first level.

    Defendants Jaymie Cabrera and Adrienne Thompson are responsible
for medical care generally and for arranging for specialized medical care

1 outside the prison.
2 Defendants Rio and Martin met with Bruss and/or reviewed
3 his requests for care and failed to help Bruss.
4 Defendant Minev is responsible to ensure the care Bruss
5 receives complies with the AR's, OP's, ACA standards, NRS
6 209 et al, as well as State and Federal law (8th Amdmt).
7 Minev also has the duty, responsibility and ability to
8 intervene to correct deficiencies through his role as chair
9 of the URP, and through the grievance procedures (as the
10 designated 2nd level responder) and did not do so for Bruss.
11 Defendant Director Daniels and his agency the NDOC
12 have a duty under the color of law, NRS 209 et al, the
13 AR's, OP's, and Nevada and U.S. Constitutions to ensure
14 inmates are provided adequate medical care and did not do
15 so for Bruss.
16 As set forth in the following three causes of action,
17 Bruss's 8th Amdmt Rights were and are being violated
18 by the Defendants individually, collectively and in concert
19 with the denial and refusal to address Bruss's serious
20 medical condition.
21 Bruss was, and is, in great pain.
22 On information and belief, if Bruss does not receive
23 follow-up care he risks permanent disability.
24
25
26
27
28 Page 3c

## C. Causes of Action

### CLAIM 1: Compressed Spine

1. The following civil rights have been violated: 8th Amendment Prohibition Against Cruel and Unusual Punishment. Defendants also deliberately indifferent to Plaintiff's serious medical condition.

Supporting Facts:

Bruss incorporates pp 1-3, 36 etc. as though fully set forth herein

On or about March of 2019 Bruss noticed he began having trouble performing daily tasks as he experienced pain in his back and neck.

As the pain became worse and effected him more and more he began the process of seeking medical care in writing (kites at first and then grievances), electronically (by a kiosk system no longer in use) and in person to medical staff who are in the unit to deliver medications at what is referred to as pill calls.

With access to his medical records, Bruss is informed and believes the following, a timeline of relevant events.

On or about March 19, 2020, Bruss was taken to Valley Hospital who ordered an MRI to diagnose his condition.

During the month of April 2020:
- On April 19, 2020 the Defendants discontinued the medication Baclofen (Def. Dr's Bryant, Bernales and/or Rivas)
- On April 20, 2020, Bruss has x-rays and blood tests at HDSP
- On April 24, 2020, Bruss taken to Valley Hospital and told he needed an MRI and Cat Scan.
- On April 29, 2020, Bruss requested emergency care ("man down") and taken to Sunrise Hospital - no neurologist available

On or about May 5, 2020 Bruss went man down and had a

Page 4

Claim One Continued

1. consultation with HDSP provider Rio, who, incredulously, despite test results
2. and examinations to the contrary suggested Bruss could feign his condition.
3. On or about June 2, 2020 Bruss had an MRI scan done of his head,
4. cervical spine and lumbar region.
5. On June 15, 2020 Bruss had his blood drawn at HDSP and also
6. had his medications (muscle relaxers) discontinued (Def's Bryd, Beenles and/or Rives)
7. On June 23, 2020, Bruss met with Rio to discuss the MRI results
8. which showed a compressed spine. Rio failed to provide follow-up care/treatment
9. On July 17, 2020, Bruss completed and submitted a pre-surgical packet.
10. On July 29, 2020, Bruss was transported late to a surgical consult at
11. Valley Hospital which was cancelled.
12. On August 10, 2020 Bruss was required to complete a new packet for
13. surgery with a different surgeon.
14. On August 13, 2020 Bruss was transported late to the surgical consult
15. which was cancelled.
16. On or about August 14, 2020 Bruss was approved for surgery.
17. Bruss initiated oral, written, and other methods (outside assistance) to
18. find out why he wasn't being sent out for surgery. (Def's Cabrera, Gutierrez, Peret, Parsons and Bryant)
19. On October 12, 2020 Bruss received physical therapy.
20. On October 21, 2020 Bruss was taken to a hand specialist who
21. informed him of the nerve damage to both hands, carpal tunnel, and the
22. need for surgery. See, Claim Two, pp 5, 5(i).
23. Bruss again initiated oral, written, and other methods, supra, to find out
24. why he wasn't being sent out for surgery or surgeries (Def's Cabrera, Gutierrez, Peret, Parsons and Bryant)
25. On or about December 9, 2020, Bruss was instructed to discontinue
26. certain medications, food, and otherwise prepare for surgery in two days
27. Bruss initiated oral, written, and other methods, supra, to find out why
28. he isn't being transported for surgery or surgeries. (Def's Minev, Bryant, Cabrera, and Gutierrez)

Page 4(a)

### Claim One Continued

1. As Bruss's condition continues to deteriorate, the symptoms of his compressed
2. cervical spine became worse. Bruss also has to deal with the knowledge that
3. a compressed cervical spine can, without intervention and treatment, lead to
4. paralysis. Some of the symptoms, include but are not limited to numbness and
5. tingling in limbs and extremities, difficulty walking, moving, sitting (including
6. for a bowel movement), sleeping and debilitating pain and suffering.
7. Defendants, and each of them, are responsible for the pain, suffering, and
8. damage caused to Bruss.
9. Bruss is informed and believes, and thereupon alleges, that his compressed
10. cervical spine would not require surgical intervention and possible irreversible
11. and permanent damage with earlier intervention and treatment.
12. Furthermore, the violation of Bruss's 8th Amendment Rights is the
13. direct result of policies the Defendants' were and are aware of before, during,
14. and after Bruss's was discovered to have a compressed cervical spine, and
15. still exist.
16. The State of Nevada expel the NDOC, the NDOC Director and the other named
17. Defendants are well aware of the problems with understaffing at HDSP, the
18. largest NDOC facility (approximately 4,000 inmates) has 4 wardens, yet only
19. one doctor (M-Th daytime only); the failure and untimely response, if
20. any, to requests for treatment, refills, emergency care, and assistance;
21. grievances ignored, delayed, and denied such that it prevents medical
22. issues from being addressed, and as to Bruss, actively interfered with
23. diagnosis, continuity of care and treatment plans brought to the
24. Defendants attention through kites, grievances, in person and in
25. writing.
26. This Deliberate indifference is a violation of Bruss's 8th Amendment
27. Rights and entitles him to the damages and other relief found in
28. Section "D", page 9 of this Complaint.

Page 4 (?)

## CLAIM 2: Nerve Damage Both Hands

1. The following civil rights have been violated: 8th Amendment Prohibition Against Cruel and Unusual Punishment. Defendants also deliberately indifferent to Plaintiff's Serious Medical Condition.

Supporting Facts:

Brass incorporates pp 1-3 (and subparts), 4 (and subparts), as though fully set forth herein, and to that adds the following:

As discussed in claim one, supra, Brass only became aware of the nerve damage to his hands when he was transported to meet with a surgeon (different doctor than the one he met with as to his compressed spine) who advised Brass he suffered from nerve damage and carpal tunnel that had progressed to the point that it would require surgery. This was in October of 2020.

Prior to the consultation with the surgeon in August of 2020 the condition as to his hands was not revealed in consultations with the Defendants who either intentionally concealed the results of diagnostic testing or prescribed him medications that would mask the condition, not treat it, causing further damage and loss of function.

Since the diagnosis, surgical consultation, Brass has sent requests for treatment, medications and surgery (kites), grievances, and sought outside assistance to determine why the delay in his surgery, which has been from October 2020 to present, almost three (3) months. (Defs Cabrera, Bryant, Minev, Gutierrez, Parsons and Peret).

Since the condition(s) effect both of his hands, it adversely impacts every aspect of his ability to function, including, but not limited to hygiene, lifting and moving objects, writing, and just about any activity that involves the use of his hand or hands.

As the condition progressively gets worse, Brass is reminded

Page 5

1 that the surgeon advised him in October that the damage diagnosed back
2 then could have been prevented if caught sooner.
3   The Defendants had the opportunity to examine Bruss, and to evaluate
4 the diagnostic tests, and outside provider interpretation and reports, as
5 to prevent the damage finally revealed to Bruss in October of 2020,
6 and which may be irreversible and permanent with the delay in surgery.
7   Bruss therefore specifically brings Claim 2 as to his hands for the actions,
8 failures and deliberate indifference of the Defendants from 2019 to the present.
9 As to the failure, refusal and delay in providing proper, timely treatment and
10 follow up care which has caused and continues to cause further damage,
11 pain and suffering, interferes with Bruss's ability to function, and
12 exacerbates his other medical condition.
13   Bruss is not a doctor or trained medical professional. The outside
14 providers (Sunrise Hospital, Valley Hospital, the diagnostic imaging
15 and surgical consults) records, reports and other documents will substantiate
16 further Bruss's claims that the failure to provide him care for his serious
17 medical conditions (in all forms) was, and is, deliberate indifference
18 entitling him to damages and other relief.
19   Bruss believes, and alleges, the outside specialist(s) sent his medical records
20 and recommendations to Cabrera, Bryant (referring physician) where they were
21 discussed with Minev at URP meetings but no action taken.
22   Bruss's kites, grievances and discussions with Parsons, Rio, Martin, Perot
23 put them and Bryant, Minev and Cabrera on notice of Bruss's medical
24 issues and concerns yet none of them intervened or advocated on his
25 behalf resulting in a discontinuing of his continuity of care and
26 puts Bruss at risk for permanent disability.
27
28

CLAIM 3: Failure to provide medications and recommended care

1. The following civil rights have been violated: 8th Amendment Prohibition
2. Against Cruel and Unusual Punishment. Defendants also deliberately
3. indifferent to Plaintiff's serious medical condition.
4. Bruss incorporates pp 1-3 (and subparts), 4 (and subparts) and 5
5. (and subparts) as though fully set forth herein and to that adds the following:
6. As set forth in claim one and claim two, Bruss was
7. prescribed medications, diagnostic tests, therapies, and was
8. approved for surgery for both conditions.
9. As set forth in the facts common to all claims, Bruss will need
10. Court ordered access to his medical records and other files to set
11. forth the facts, witnesses, documents and other evidence to support
12. this claim. Therefore, on information and belief Bruss alleges as
13. follows:
14. Prior to being referred out to outside of the prison specialists,
15. Bruss was alternatively prescribed muscle relaxers and other
16. medications that were denied, delayed, and/or allowed to run
17. out or expire denying him care, treatment and the infliction of
18. pain suffering and further damage by Def's Bryant, Bramles, Rivas and others
19. Kites, oral requests, and then grievances were either unresponded
20. to, denied, or delayed as to result in a disruption in continuity of
21. care, damage, pain and suffering by Def's Purgas, Aoed and Gutierez + Minon
22. This destructive and intentional course of conduct by the
23. Defendants unfortunately continued as Bruss's condition deteriorated
24. and he was seen by outside health care providers.
25. When Bruss was transported to outside facilities, he was both
26. handcuffed and in leg restraints and not allowed to take any notes,
27. or given copies of any recommendations, treatment plans or prescriptions.
28. 

Page 6

Claim Three continued

1. Bruss is informed and believes he has and continues to be denied:
2. • surgery to address his compressed spine
3. • surgery to address the nerve damage and carpal tunnel to his hands
4. • gabapentin
5. • other medications prescribed by the outside medical care providers
6. As to the medications Bruss is being provided
7. • the ~~Baclofen~~ Duextofen has been stopped by Defs Bryant, Benudes and Rivas.
8. • Lyrica not provided until September 2, 2020 and since discontinued, supra
9.   - the prison 'Runs out' resulting in a disruption in the continuity of
10.    care (skipped doses) and worsening of symptoms and adverse effect
11.    on daily functioning.
12. The Defendants are well aware of Bruss's serious medical conditions though
13. the medical examinations, diagnostic testing, and outside provider consultations
14. and multiple requests for medications, further testing and surgeries, which
15. was approved through medical staff both at HDSP and at the NDOC, and addressed
16. in grievances, kites and consultations with Bruss.
17. The denials, delays, and interruptions to the continuity of care were the
18. result of deliberate indifference of the Defendants which has caused, and
19. continues to cause Bruss pain, suffering and damages to his serious
20. medical conditions.
21. Cabrera failed to obtain approval and/or schedule follow-ups or with the
22. assistance of Defendant Adrienne Thompson.
23. The physician defendants (Bryant, Benudes and Rivas) allowed Bruss's
24. medications and treatments to stop, expire at great risk to Bruss.
25. Nursing Defendants Parsons, Perez and Gutierrez ignored, delayed or
26. denied kites and grievances which could have addressed the situation.
27. Defendant Minev ignored outside calls and failed to intervene on Bruss's
28. behalf allowing the harm to continue without redress.

Page 6 (a)

9) Have you filed other actions in state or federal courts involving some or similar facts as involved in this action? Circle one: Yes or No. If your answer is "Yes", describe each lawsuit. (If more than one, describe the others on an additional page answering the following questions).
   a)
   b)
   c) Not applicable
   d)
   e)
   f)

10) Have you filed an action in federal court that was dismissed because it was determined to be frivolous, malicious, or failed to state a claim upon which relief could be granted? Circle one: Yes or No. If your answer is "Yes" describe each lawsuit. (If you had more than three actions dismissed based on the above reasons, describe the others on an additional page answering the following questions.)
   -NONE- LAWSUITS #1, 2, or 3
   a)
   b)
   c) Not Applicable
   d)
   e)
   f)

Page 7

## D. Request for Relief

1. I believe I am entitled to the following relief:

- Damages as to all claims as allowed by law according to proof
- Injunctive Relief as allowed by law and deemed appropriate;
- Declaratory Relief as deemed appropriate;
- Any other necessary and proper relief allowed by law under the facts and circumstances

I understand that a false statement or answer to any question in this complaint will subject me to penalties of perjury. I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT. See 28 USC §1746 and 18 USC §1621.

Law clerk(s) at HDSP
(name of person who prepared or helped prepare this complaint if not the plaintiff)

_George Brass_
(Signature of plaintiff)
George Brass #1045449
6-27-2022
(date)

Page 8