UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BRASS, | Case No. 2:21-cv-00074-RFB-VCF |
| Plaintiff, | **ORDER SCREENING FIRST AMENDED COMPLAINT AND RESOLVING SOME PENDING MOTIONS** |
| v. | |
| THE STATE OF NEVADA EX REL THE NDOC, *et al.* | |
| Defendants. | |

## I.    INTRODUCTION

Before the Court are Defendants' Motion to Dismiss (ECF No. 28), Plaintiff's Motion for Leave to Amend (ECF Nos. 29, 31), Plaintiff's Motion for an Emergency Hearing (ECF No. 32), Plaintiff's Motion for Temporary Restraining Order (ECF No. 34), Plaintiff's Motion for Preliminary Injunction (ECF No. 35), and Defendants' Motion to Extend Time (First Request) (ECF No. 36).

It appears that Plaintiff filed the motion for leave to amend in response to Defendants' Motion to Dismiss. The Court grants the motion for leave to amend and screens the superseding amending pleading submitted as part of Plaintiff's response. Accordingly, Plaintiff's motions for injunctive relief and request for an emergency hearing are denied without prejudice, and Defendants' motions to dismiss and to extend time are denied as moot.

## II.    PROCEDURAL BACKGROUND

Plaintiff, who is incarcerated in the custody of the Nevada Department of Corrections ("NDOC"), initiated this action by filing a civil rights complaint pursuant to 42 U.S.C. § 1983 on

January 14, 2021. ECF No. 1-1. Plaintiff also filed a motion for appointment of counsel, ECF No. 18, and Defendants filed a motion to vacate a minute order, ECF No. 23. Plaintiff paid the filing fee in full. ECF No. 6. On July 2, 2021, the Court issued a screening order and directed the Clerk of the Court to file the Complaint. ECF Nos. 11, 12. The Court dismissed the Complaint without prejudice and ordered Plaintiff to file an amended complaint within 45 days. ECF No. 11. On July 22, 2021, Plaintiff filed a motion to extend time to file an amended complaint, ECF No. 14, and on December 28, 2021, the Court granted the motion, ECF No. 22.

On December 22, 2021, Plaintiff filed motions for a temporary restraining order and a preliminary injunction, contending that he was not getting medical treatment that was ordered, including surgery for his hand, and follow up medical treatment for back surgery. ECF Nos. 19, 20. On December 28, 2021, the Court, having dismissed Plaintiff's Complaint without prejudice, and Plaintiff having yet to file an amended complaint, denied the motions without prejudice because there was no operative complaint to assess Plaintiff's motions. ECF No. 22. The Court noted that Plaintiff could refile the motions after he filed the amended complaint pursuant to its July 2, 2021 order. Id. The Court gave Plaintiff until February 2, 2022, to file an amended complaint.  Id. Plaintiff did not file an amended complaint on February 2, 2022.

On April 7, 2022, the Court vacated the July 2, 2021 screening order, rescreened the Complaint under 28 U.S.C. § 1915A, and addressed the motions. ECF No. 26.  Based upon the record in the case, the Court concluded rescreening was appropriate. Id. The Court found that Plaintiff's Complaint alleged sufficient facts for colorable deliberate indifference claims on all three claims against Defendant Charles Daniels for injunctive relief and Doe medical and nursing directors of Nevada Department of Corrections ("NDOC") and High Desert State Prison ("HDSP") and Doe members of the NDOC Utilization Review Panel. Id.[1] The Court noted that, "[i]f the true identity of any of the Doe Defendant(s) [came] to light during discovery, Plaintiff [could] move to substitute the true names of Doe Defendant(s) to assert claims against the Doe Defendant(s) at that time." ECF No. 26 at 7. Plaintiff's Complaint also indicated that he would "need to amend or

---

[1] The Court's April 7, 2022 Order also denied as moot Defendants' Motion to Vacate and denied without prejudice Plaintiff's Motion for Appointment of Counsel. It also dismissed the State of Nevada with prejudice. ECF No. 26.

1   supplement this Complaint once the true names, titles, and other identifying information and

2   relevant facts are learned through discovery or other means." ECF No. 12 at 2.

3       On June 6, 2022, Defendants filed a motion to dismiss Plaintiff's Complaint for failure to

4   state a claim upon which relief could be granted. ECF No. 28. Plaintiff responded on June 17,

5   2022, and Defendants replied on June 24, 2022. ECF Nos. 29, 30. Additionally, Plaintiff filed a

6   "REPLY re (unspecified) Motion for Leave to Amend." ECF No. 31. In that filing, Plaintiff

7   attached a "First Amended Civil Rights Complaint Pursuant to 42 U.S.C. § 1983," contending that

8   "Defendants do not oppose Brass's Motion for Leave to Amend[, and] therefore Brass's Motion

9   for Leave to Amend should be granted." Id.

10      Separately, on September 16, 2022, Plaintiff filed a "Motion for an Emergency Hearing re:

11  Plaintiff's medical condition," contending that he was not getting medical treatment for "skin

12  lesions, discoloration, and pox like sores." ECF No. 32. On October 10, 2022, Plaintiff filed new

13  motions for a temporary restraining order and a preliminary injunction. ECF Nos. 34, 35. On

14  October 24, 2022, Defendants filed a motion to extend time to respond to the newly filed motions

15  for injunctive relief. ECF No. 36.

16      The Court finds that Plaintiff filed a motion for leave to amend in response to Defendants'

17  Motion to Dismiss. Accordingly, the Court addresses the motion for leave to amend and finds

18  screening the superseding amending pleading submitted as part of Plaintiff's response to be

19  appropriate. The Court also addresses Plaintiff's motions for injunctive relief and request for an

20  emergency hearing, as well as Defendants' motion to dismiss and motion to extend time.

21

22      **III.     MOTION FOR LEAVE TO AMEND THE COMPLAINT**

23      Federal Rule of Civil Procedure 15(a) provides that a trial court shall grant leave to amend

24  freely "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[T]his policy is to be applied with

25  extreme liberality." Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir.

26  1990); see also Waldrip v. Hall, 548 F.3d 729, 732 (9th Cir. 2008).  The "rule favoring liberality

27  in amendments to pleadings is particularly important for the pro se litigant." Lopez v. Smith, 203

28  F.3d 1122, 1131 (9th Cir. 2000). This liberality, though, "is subject to several limitations. Those

1    limitations include undue prejudice to the opposing party, bad faith by the movant, futility, and

2    undue delay." Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058 (9th Cir.

3    2011) (citations marks omitted); see also Waldrip, 548 F.3d at 732.

4          "[A] district court should grant leave to amend even if no request to amend the pleading

5    was made, unless it determines that the pleading could not possibly be cured by the allegation of

6    other facts." Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995); see also Cook, Perkiss &

7    Liehe, Inc. v. N. California Collection Serv. Inc., 911 F.2d 242, 247 (9th Cir. 1990) ("We have

8    held that in dismissals for failure to state a claim, a district court should grant leave to amend even

9    if no request to amend the pleading was made, unless it determines that the pleading could not

10   possibly be cured by the allegation of other facts. Therefore, it is of no consequence that [plaintiff]

11   did not file a formal motion, accompanied by a proposed amendment, requesting leave to amend."

12   (citations omitted)).

13         Coupled with his Response to the Defendants' Motion to Dismiss, Plaintiff's supplemental

14   Reply to Defendants' own Reply was inappropriately filed as an unauthorized amended complaint,

15   rather than a true response. Fed. R. Civ. P. 15(a); see also Sudduth v. Citimortgage, Inc., 79 F.

16   Supp. 3d 1193, 1198 n.2 (D. Colo. 2015) ("Plaintiffs cannot amend their complaint by adding

17   factual allegations in response to Defendants . . . motion to dismiss."). The Court, acknowledging

18   this procedural error, liberally construes Plaintiff's Response and supplemental Reply as a Motion

19   to Amend, i.e. a Proposed First Amended Complaint. Castro v. United States, 540 U.S. 375, 381-

20   82 (2003) (Courts may construct pro se filings in a way that "create[s] a better correspondence

21   between the substance of a pro se motion's claim and its underlying legal basis.").

22         Here, Plaintiff's First Amended Complaint ("FAC") names additional parties, including

23   medical and nursing directors, physicians, and nurse practitioners of NDOC and HDSP. Under

24   Claims 1, 2, and 3, the FAC alleges how these named individuals violated his rights under the

25   Eighth Amendment by denying him certain treatment for his specific ailments. Given the current

26   stage of this case, the Court does not find that any limitations counsel against granting Plaintiff's

27   motion for leave to amend, including any "undue prejudice to the opposing party, bad faith by the

28   movant, futility, [or] undue delay." Cafasso, 637 F.3d at 1058.

The Court also notes that Plaintiff is only seeking to amend his complaint to add the names of defendants and to further specify which of those named defendants his claims apply to and does not additional claims. Further, Defendants' Reply to Plaintiff's Response to the Motion to Dismiss does not address Plaintiff's argument that leave to amend should be granted, nor did Defendants attempt to separately respond to Plaintiff's "REPLY re (unspecified) Motion for Leave to Amend" in opposition. See Rogers Enterprises, Inc. v. Hitachi Sols. Am., Ltd., No. 19-cv-1913-PSG-JDEX, 2022 WL 1410000, at *12 (C.D. Cal. Jan. 18, 2022) ("Defendant fails to respond to any of Plaintiff's arguments . . . and thus concedes these issues."). Moreover, before the Court rescreened Plaintiff's Complaint, it gave Plaintiff the opportunity to file an amended complaint. While Plaintiff did not timely file an amended complaint within time frame ordered, the Court ultimately rescreened Plaintiff's original Complaint and allowed Claims 1, 2, and 3 to proceed.[2] Plaintiff is, however, warned that any future filings, including supplemental filings, must be filed pursuant to the Local Rules, see Local Rule IA 7-2(a), (g), and if Plaintiff requires an extension of time, he must also file a motion pursuant to Local Rule IA 6-1.

Accordingly, the Court will grant the motion for leave to amend and now screens the FAC.

## IV.     SCREENING THE AMENDED COMPLAINT

### a.  SCREENING STANDARD

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). In its review, the Court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. See id. §§ 1915A(b)(1), (2). Pro se pleadings, however, must be liberally construed. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United

---

[2] The Court's basis for ordering Plaintiff to file an amended complaint was because its original screening order dismissed the original Complaint without prejudice.

1   States; and (2) that the alleged violation was committed by a person acting under color of state

2   law. West v. Atkins, 487 U.S. 42, 48 (1988).

3          In addition to the screening requirements under § 1915A, under the Prison Litigation

4   Reform Act ("PLRA"), a federal court must dismiss an incarcerated person's claim if "the

5   allegation of poverty is untrue" or if the action "is frivolous or malicious, fails to state a claim on

6   which relief may be granted, or seeks monetary relief against a defendant who is immune from

7   such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon

8   which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the

9   Court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an

10   amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be

11   given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear

12   from the face of the complaint that the deficiencies could not be cured by amendment. Cato v.

13   United States, 70 F.3d 1103, 1106 (9th Cir. 1995).

14          Review under Rule 12(b)(6) is essentially a ruling on a question of law. See Chappel v.

15   Lab. Corp. of Am., 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is

16   proper only if the plaintiff clearly cannot prove any set of facts in support of the claim that would

17   entitle him or her to relief. Id. at 723-24. In making this determination, the Court takes as true all

18   allegations of material fact stated in the complaint, and the Court construes them in the light most

19   favorable to the plaintiff. Warshaw v. Xoma Corp., 74 F.3d 955, 957 (9th Cir. 1996). Allegations

20   of a pro se complainant are held to less stringent standards than formal pleadings drafted by

21   lawyers. Hughes v. Rowe, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not

22   require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions.

23   Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of

24   a cause of action is insufficient. Id.

25          Additionally, a reviewing court should "begin by identifying [allegations] that, because

26   they are no more than mere conclusions, are not entitled to the assumption of truth." Ashcroft v.

27   Iqbal, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a

28   complaint, they must be supported with factual allegations." Id. "When there are well-pleaded

1    factual allegations, a court should assume their veracity and then determine whether they plausibly

2    give rise to an entitlement to relief. Id. "Determining whether a complaint states a plausible claim

3    for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial

4    experience and common sense." Id.

5         Finally, all or part of a complaint filed by a person incarcerated may be dismissed sua

6    sponte if that person's claims lack an arguable basis either in law or in fact. This includes claims

7    based on legal conclusions that are untenable—like claims against defendants who are immune

8    from suit or claims of infringement of a legal interest that clearly does not exist—as well as claims

9    based on fanciful factual allegations like fantastic or delusional scenarios. Neitzke v. Williams,

10   490 U.S. 319, 327-28 (1989).

11                                **b.  SCREENING OF THE FAC**

12        In the FAC, Plaintiff sues multiple defendants for events that took place while Plaintiff was

13   incarcerated at HDSP. ECF No. 31 at 4. Plaintiff sues Defendants State of Nevada ex rel NDOC,[3]

14   NDOC Director Charles Daniels, HDSP physicians Gregory Bryant, Wilson Bernales, and David

15   Rivas, NDOC Medical Director Michael Minev, HDSP Nursing Director Benjamin Gutierrez,[4]

16   Nurse Practitioner Rio, Nurse Practitioner Martin, HDSP medical case manager Jaymie Cabrera,

17   Adrienne Thompson, HDSP charge nurse Nilo Peret,[5] HDSP registered nurse Nick Parsons, and

18   Does. Id. at 4-7. Plaintiff alleges three claims and seeks monetary, injunctive, and declaratory

19   relief. See id. at 11, 14, 16, 19.

20                                     **i.  Claim 1**

21        In Claim 1, Plaintiff alleges the following:  In March 2019, Plaintiff started experiencing

22   pain in his back and neck and started having difficulty performing daily tasks. Id. at 11. As his

23   pain grew worse, he started to file medical grievances. Id. On March 19, 2020, prison officials

24   _____

25   [3] The Court already dismissed Defendant State of Nevada ex rel Nevada Department of Corrections with
26   prejudice, therefore it does not address any claims alleged against it in this screening order.

27   [4] Defendant Gutierrez is responsible for all aspects of nursing at HDSP, including staffing supervision and
     also responds or assigns, for response, medical requests for treatment or kite grievances.

28   [5] Defendant Peret supervises HDSP's nursing staff and provides direct care to inmates in all forms as well as
     assists with responding to kites, grievances, and in person requests.

took Plaintiff to Valley Hospital. Id. The employees there ordered an MRI to diagnose Plaintiff's condition. Id. On April 19, 2020, Defendants stopped issuing Baclofen to Plaintiff. Id. On April 20, 2020, prison officials conducted x-rays and blood tests on Plaintiff. Id. On April 24, 2020, prison officials took Plaintiff to Valley Hospital and told him that he needed an MRI and a CAT scan. Id. On April 29, 2020, Plaintiff called an emergency man down and prison officials took him to Sunrise Hospital. Id. There was, however, no neurologist available. Id. On May 5, 2020, Plaintiff called a man down and had a consultation with HDSP provider Rio. Id. at 11-12. Despite Plaintiff's tests and examinations, Nurse Practitioner Rio thought Plaintiff was "feigning" his condition. Id. at 12.

On June 2, 2020, someone conducted an MRI on Plaintiff's head, cervical spine, and lumbar region. Id. On June 15, 2020, Defendants Bryant, Bernales, and Rivas drew Plaintiff's blood at HDSP and discontinued his muscle relaxer medications. Id. On June 23, 2020, Plaintiff met with Nurse Practitioner Rio and discussed the MRI results which showed a compressed spine. Id.

On July 17, 2020, Plaintiff completed and submitted a pre-surgical packet. (Id.) On July 29, 2020, prison officials transported Plaintiff to a surgical consult at Valley Hospital which was cancelled. Id.

On August 10, 2020, Plaintiff had to complete a new packet for surgery with a different surgeon. Id. On August 13, 2020, prison officials transported Plaintiff late to the surgical consult "which was cancelled." Id. On August 14, 2020, someone approved Plaintiff for surgery. (Id.) Plaintiff initiated written and oral inquiries to Defendants Cabrera, Gutierrez, Peret, Parsons, and Bryant as to why he had not been sent out for surgery. Id.[6]

On October 12, 2020, Plaintiff received physical therapy. Id. On October 21, 2020, Plaintiff was taken to a hand specialist who found that Plaintiff had nerve damage in both hands, had carpal tunnel, and needed surgery. Id. Plaintiff once more initiated written and oral inquiries to

---

[6] According to the FAC, Defendants Parsons, Peret, and Gutierrez are responsible or are assigned to review and respond to Plaintiff's medical kites and grievances at the informal and first level, and that Defendants Cabrera and Thompson are responsible for medical care generally and for arranging for specialized medical care outside of the prison.

Defendants Cabrera, Gutierrez, Peret, Parsons, and Bryant as to why he had not been sent out for surgery or surgeries. Id.

On December 9, 2020, someone discontinued some of Plaintiff's medications and food to prepare him for surgery in ten days. Id. Plaintiff initiated oral and written inquiries to Defendants Minev, Bryant, Cabrera, and Gutierrez as to why he was not being transported for surgery or surgeries. Id.

Plaintiff's condition continues to deteriorate, and his compressed cervical spine has become worse. Id. at 13. Without intervention and treatment, Plaintiff's condition could lead to paralysis. Id. Plaintiff has had numbness in his limbs and extremities; difficulty walking, moving, sleeping, and sitting even for bowel movements; and has suffered from debilitating pain. Id. Defendants were responsible for his pain and suffering. Id.

### ii.   Claim 2

In Claim 2, Plaintiff alleges the following: In October 2020, Plaintiff became aware of the nerve damage in his hands during a consultation with a surgeon. Id. at 14. Although Plaintiff had a consultation with a different surgeon in August 2020, nobody revealed his nerve damage to him. Id. Defendants either intentionally concealed the results of the diagnosis or prescribed him medication that would mask the condition to prevent treatment. Id. Since learning of the nerve damage, Plaintiff sent requests for treatment, medications, grievances, and sought assistance from Defendants Cabrera, Bryant, Minev, Gutierrez, Parsons, and Peret to determine the delay in surgery. Id. The nerve damage in his hands adversely impacts his hygiene, lifting and moving objects, writing, and any activity that requires him to use his hands. Id. The FAC alleges that Defendants Cabrera and Bryant received Plaintiff's medical records and recommendations from outside specialist and discussed them at NDOC Utilization Review Panel meetings with Defendant Minev, but that they all took no action based on them. Id. at 15. Moreover, Plaintiff's kites, grievances, and discussions with Defendants Parsons, Nurse Practitioner Rio, Nurse Practitioner Martin, and Peret put them, as well as Defendants Bryant, Minev, and Cabrera on notice of Plaintiff's medical conditions yet failed to provide him with any medical care. Id.

//

### iii.   Claim 3

In Claim 3, Plaintiff alleges the following: Plaintiff had been prescribed medications, diagnostic tests, therapies, and had been approved for surgeries for both conditions. Id. at 16. Prior to being referred to outside specialists, someone was prescribing Plaintiff muscle relaxers and other medications which Defendants Bryant, Bernales, Rivas, and others denied, delayed, or permitted to run out or expire. Id. This caused him pain and suffering. Id. Defendants Parsons, Peret, Gutierrez, and Minev either denied, delayed, or failed to respond to Plaintiff's grievances. Id. Since September 2, 2020, Plaintiff has not received Lyrica. Id. at 17. Plaintiff also stopped receiving Baclofen. Id. Defendants were aware of Plaintiff's serious medical conditions. Id. Defendants Cabrera and Thompson failed to obtain approval or schedule follow ups for these medical conditions. Id. Defendants Bryant, Bernales, and Rivas allowed Plaintiff's medications and treatment to expire putting Plaintiff in great risk. Defendants Parsons, Peret, and Gutierrez ignored, delayed, or denied kites and grievances. Id. Defendant Minev also ignored Plaintiff's kites and grievances and failed to intervene leading to Plaintiff's alleged harm. Id.

### c.   Analysis of the Claims

Plaintiff alleges claims for Eighth Amendment deliberate indifference to serious medical needs for his compressed spine (Claim 1), the nerve damage to his hands (Claim 2), and failure to provide medications and recommended care (Claim 3). Id. at 11, 14, 16.

A plaintiff cannot recover money damages from state officials sued in their official capacities. See Aholelei v. Dep't of Pub. Safety, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted). Official capacity suits may seek only prospective or injunctive relief. See Wolfson v. Brammer, 616 F.3d 1045, 1065-66 (9th Cir. 2010). In addition to being limited to prospective relief, a plaintiff pursuing defendants in their official capacities must demonstrate that a policy or custom of the governmental entity of which the official is an agent was the moving force behind the violation. See Hafer v. Melo, 502 U.S. 21, 25 (1991); Kentucky v. Graham, 473 U.S. 159, 166 (1985). Personal capacity suits, on the other hand, "seek to impose personal liability upon a government official for actions [the official] takes under color of state law." Kentucky v. Graham, 473 U.S. 159, 165 (1985). Liability in a personal-capacity suit can be demonstrated by showing

that the official caused the alleged constitutional injury. See id. at 166.

In addition, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). When a named defendant holds a supervisory position, the causal link between him or her and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfield, 589 F.2d 438, 441 (9th Cir. 1978). Plaintiff must allege facts that a supervisory defendant either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or implemented a policy "so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); Taylor, 880 F.2d at 1045.

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976). A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate. Farmer v. Brennan, 511 U.S. 825, 828 (1994). "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012).

To establish the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted). To satisfy the deliberate indifference prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Id. "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. (internal quotations omitted). When a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the

delay led to further injury. See Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference").

Liberally construing the FAC for purposes of screening only, the Court finds that the First Amended Complaint alleges sufficient facts for colorable deliberate indifference claims on all three claims. With respect to Claim 1, Plaintiff alleges that his back pain was not treated even though prison officials had knowledge and warning given Plaintiff's numerous filed grievances and doctors' orders. With respect to Claim 2, Plaintiff again alleges that the pain in his hands has not been adequately treated, and that defendants have ignored the prescription or recommendation for surgery. With respect to Claim 3, Plaintiff alleges worsening pain because of a lack of prompt or responsive treatment from prison officials who were aware of his conditions. Plaintiff was prescribed medication and therapies, yet prison officials denied, delayed, or failed to respond to his grievances. All three claims state colorable claims and shall proceed.

All three claims will also proceed against all Defendants, except Defendant Thompson. This is because other than describing what Defendant Thompson's responsibility was, and that she failed to obtain approval or schedule follow ups related to Plaintiff's medical conditions, the FAC fails to provide any other facts that describe how Defendant Thompson violated Plaintiff's Eighth Amendment rights.

Further, as a general matter, Defendants cannot be sued in their official capacities for monetary relief. Therefore, Claim 1, Claim 2, and Claim 3, in so far as they seek monetary relief, cannot proceed against Defendants in their official capacities. Accordingly, the Court will permit all three claims to proceed against Defendant Charles Daniels for injunctive relief. See Colwell v. Bannister, 763 F.3d 1060, 1070 (9th Cir. 2014) (holding that "a corrections department secretary and prison warden were proper defendants in a § 1983 case because '[a] plaintiff seeking injunctive relief against the State is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation. Rather, a plaintiff need only identify the law or policy challenged as a constitutional violation and name the official within the entity who can appropriately respond to injunctive relief.'"). Moreover, the Court will permit all three

claims to proceed against Defendants Bryant, Bernales, Rivas, Minev, Gutierrez, Cabrera, Peret, and Parsons in their official capacities only for injunctive relief and for monetary relief in their personal capacities. See Romano v. Bible, 169 F.3d 1182, 1185-86 (9th Cir. 1999); Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Hansen, 885 F.2d at 646; Taylor, 880 F.2d at 1045. Lastly, the Court permits all three claims to proceed against Defendants Rio and Martin in their personal capacities for monetary relief.

### V.    CONCLUSION

**IT THEREFORE ORDERED** that Plaintiff's Response and Reply to Defendants' Motion to Dismiss (ECF Nos. 29, 31) are construed as a Motion to Amend.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend is GRANTED. (ECF Nos. 29, 31)

**IT IS FURTHER ORDERED** that the First Amended Complaint (ECF No. 31) is the operative complaint, that it is docketed at ECF No. 37, and that the Clerk of Court send Plaintiff a courtesy copy.

**IT IS FURTHER ORDERED** that Gregory Bryant, Wilson Bernales, David Rivas, Michael Minev, Benjamin Gutierrez, Nurse Practitioner Rio, Nurse Practitioner Martin, Jaymie Cabrera, Adrienne Thompson, Nilo Peret, and Nick Parsons be included in this case as Defendants. The Clerk of the Court will add Bryant, Bernales, Rivas, Minev, Gutierrez, Rio, Martin, Cabrera, Thompson, Peret, and Parsons to the docket sheet as Defendants in this action.

**IT IS FURTHER ORDERED** that Defendant Adrienne Thompson is DISMISSED from the entirety of this action without prejudice.

**IT IS FURTHER ORDERED** that Claim 1, Claim 2 and Claim 3, alleging Eighth Amendment deliberate indifference to serious medical needs, will proceed against Defendants Charles Daniels, Gregory Bryant, Wilson Bernales, David Rivas, Michael Minev, Benjamin Gutierrez, Jaymie Cabrera, Nilo Peret, and Nick Parsons for injunctive relief. Claims 1, 2 and 3 will also proceed against Defendants Gregory Bryant, Wilson Bernales, David Rivas, Michael Minev, Benjamin Gutierrez, Nurse Practitioner Rio, Nurse Practitioner Martin, Jaymie Cabrera, Nilo Peret, and Nick Parsons for monetary relief.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall electronically SERVE a copy of this order and a copy of Plaintiff's First Amended Complaint (ECF No. 37) on the Office of the Attorney General of the State of Nevada. This does not indicate acceptance of service.

**IT IS FURTHER ORDERED** that service must be perfected within ninety (90) days from the date of this order pursuant to Fed. R. Civ. P. 4(m).

**IT IS FURTHER ORDERED** that subject to the findings of this order, within **twenty-one (21) days** of the date of entry of this order, the Attorney General's Office shall file a notice advising the Court and Plaintiff of: (a) the names of the defendants for whom it accepts service; (b) the names of the defendants for whom it does not accept service, and (c) the names of the defendants for whom it is filing the last-known-address information under seal. As to any of the named defendants for whom the Attorney General's Office cannot accept service, the Office shall file, under seal, but shall not serve the inmate Plaintiff the last known address(es) of those defendant(s) for whom it has such information.  If the last known address of the defendant(s) is a post office box, the Attorney General's Office shall attempt to obtain and provide the last known physical address(es).

**IT IS FURTHER ORDERED** that, if service cannot be accepted for any of the named defendant(s), Plaintiff shall file a motion identifying the unserved defendant(s), requesting issuance of a summons, and specifying a full name and address for the defendant(s). For the defendant(s) as to which the Attorney General has not provided last-known-address information, Plaintiff shall provide the full name and address for the defendant(s).

**IT IS FURTHER ORDERED** that, if the Attorney General accepts service of process for any named defendant(s), such defendant(s) shall file and serve an answer or other response to the amended complaint (ECF No. 37) within **sixty (60) days** from the date of this order.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon defendant(s) or, if an appearance has been entered by counsel, upon their attorney(s), a copy of every pleading, motion or other document submitted for consideration by the Court. If Plaintiff electronically files a document with the Court's electronic-filing system, no certificate of service is required. Fed. R. Civ. P. 5(d)(1)(B); Local Rule IC 4-1(b); Local Rule 5-1.  If, however, Plaintiff mails the document

to the Court, Plaintiff shall include with the original document submitted for filing a certificate stating the date that a true and correct copy of the document was mailed to the defendants or counsel for the defendants. If counsel has entered a notice of appearance, Plaintiff shall direct service to the individual attorney named in the notice of appearance, at the physical or electronic address stated therein. The Court may disregard any document received by a district judge or magistrate judge which has not been filed with the Clerk, and any document received by a district judge, magistrate judge, or the Clerk which fails to include a certificate showing proper service when required.

**IT FURTHER ORDERED** that Defendants' Motion to Dismiss (ECF No. 28) the Complaint is DENIED as moot.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for an Emergency Hearing (ECF No. 32) is DENIED.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Temporary Restraining Order (ECF No. 34) and Motion for Preliminary Injunction (ECF No. 35) are DENIED without prejudice. Plaintiff may refile a Motion for Preliminary Injunction and/or Motion for Temporary Restraining Order after the operative amended complaint is docketed at ECF No. 37 so that the Court may properly assess such motions.

**IT IS FURTHER ORDERED** that Defendants shall file under seal Plaintiff's complete medical records by November 28, 2022 and shall also provide Plaintiff with a copy of his complete medical records in his cell by that date.

**DATED:** November 17, 2022

_____

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**